## WEED· *a.* PENDLETON.

*Supreme Court, First District ; General Term, November,* 1854.

### JUDGMENT RECORD.—REGULARITY.—ESTOPPEL OF JUDGMENT DEBTOR.

Where a second record of judgment in the course of a suit was, by mistake, made up and filed, and execution issued thereupon, in good faith, upon the supposition that the second entry of judgment was in fact for another demand, and the defendant contrived to procure satisfaction of the first entered judgment, and then moved to vacate the second for irregularity :

*Held,* that he was, under the circumstances, estopped, by procuring the first judgment to be satisfied, from objecting to the regularity of the second.

Motion to vacate the record of a judgment.

Pendleton, the judgment debtor, brought an action in the Superior Court, to recover damages for the taking of his property upon execution, issued under the judgment now sought to be set aside, which was a judgment entered in the Supreme Court, but the Superior Court held the record conclusive to justify the taking. He then moved this court at special term, upon grounds which appear in the opinion, to vacate the judgment and take the record from the files, in order that he might recover for the property taken upon the execution. The motion was denied, and he appealed.

*A. Matthews,* for the motion.

*D. D. Field,* in opposition.

MITCHELL, J.—Pendleton endorsed to C. W. Weed three notes, each dated February, 1837 ; one at twelve months, for $4,308 97, another at fifteen months, for the same sum, and the third at eighteen months, for $2,154 48. On the first note judgment was obtained on 8th of May, 1838, for $4,450 12. On the second note an action was commenced 31st May, 1838, and judgment was entered on it 2d July, 1838, for $4,450 25. No action was ever brought on the third note for $2,154 48.

The attorneys for the plaintiffs are dead, but it appears from

their register, that they entered in it the commencement of the suit on the second note, and all the proceedings to the assessment of damages and taxation of costs, but did not enter the fact of filing the judgment record; and that nearly a year after that, in June, 1839, a clerk of theirs filed a record on the last mentioned day, and made an entry of doing so. Thus the plaintiffs had three notes endorsed by the defendant, and three judgment records—one on the first note, another on the second note, and a third, in reality, on the second note, but which, after a lapse of time, they might naturally suppose, if they did not recollect the amount of the notes, was for the third note. On the 15th June, 1839, execution was issued on this third judgment record and returned wholly unsatisfied. Nothing was done on either judgment, until 16th February, 1849, nearly ten years afterwards, an *alias fi. fa.* was issued on this last judgment, and Pendleton's property was taken under it. He has since commenced an action of trespass for this taking, and as the judgment record cannot be impeached in that action, he moved this court to vacate the entry of the third judgment.

This is a motion addressed to the equity of the court; it is necessary, therefore, to see whether equity requires that this motion should be granted.

After the levy, Pendleton discovered that the third judgment, as well as the second, was on the second note, and was advised that the third was a nullity. He called on Charles W. Weed, who was attorney for the plaintiffs, in the summer or fall of 1849, and concealing the fact that he and his counsel thought the third judgment void, and the execution under it irregular, and that he had discovered that the third judgment was not on the third note, but on the second,— he commenced the conversation, as he shows, by remarks, which must have led Weed to understand that all three of the judgments were in full force, and that the execution on the third was regular; for instead of intimating that the execution was irregular, he spoke of it as unjust to him, because it was issued for old and extinguished claims, and during his absence from the city, and in violation of an understanding before hand that he should not be molested in respect to the same; and that he

must have a statement of the disposition that had been made of the collateral paper which had been placed in the hands of the plaintiffs, which collateral was to the whole debt. He thus suppressed facts, the knowledge of which he knew would have prevented Weed from doing what Weed afterwards offered to do, and also by the statements made by him led Weed to believe that the third judgment, and the execution on it, were valid. If they were not valid, there was no need of Pendleton's having an account of the collateral paper, and they could not much molest him; a motion to set them aside was all that he needed. Under the impression thus produced by Pendleton, Weed promised to procure, and did procure an assignment to a friend of Pendleton's, of the two first judgments. Pendleton having got them, a few days afterwards also asked for and obtained satisfaction pieces for those two judgments, and filed them. And "*from that time,*" he says, " his counsel made various endeavors to procure satisfactory compensation to deponent for his property, which had been taken and sacrificed to the extent of about $20,000, by the sheriff's sale, under said *alias* execution."

This seems as if he would say, that having thus procured a satisfaction to be entered of the first two judgments without payment, he from that time endeavored to defeat the third which he had led Weed to believe was valid and in force. When Pendleton came and complained of the levy on his goods, his complaint must have been of the levy under the execution on the third judgment, for no other was issued. Weed then stated to him that he could not satisfy the third, for it was assigned as security to his attorneys, but offered to assign the first and second, with the understanding, at least on his part, that he would retain the third and the execution on it. When Weed thus distinctly stated his views, Pendleton was bound to decline the offer, or to accept it with the condition which he knew Weed meant to attach to it, or disabuse Weed from the false impression on his mind, produced in part by Pendleton's aid. Pendleton, by the acceptance of the two assignments under the circumstances, and the concealment which he practiced, has estopped himself from setting up the invalidity of the third judgment, at least on a motion where

he seeks affirmative relief, which the court is to grant only if equity require it.

The defendant's counsel argued as if the third judgment were so irregular, that it was a matter of course, to set it aside. It is not so. That judgment-record was founded on the second note, and on the declaration actually served on it. So also was the second judgment-record. If the defendant had moved to have one of the two records cancelled, and it had been shown that he had done any act, in consequence of which, it might be difficult to sustain the second judgment,—the court would have sustained the third and cancelled the second. So here, the defendant having procured a satisfaction of the second, without consideration, or by causing the belief that the third was valid, the court should now sustain the third, as the true record under that note. Or, if the second were not satisfied, the court might have awarded the *fi. fa.* and *alias fi. fa.* so as to apply them to the second judgment. But that cannot now be done, in consequence of the defendant's procuring a satisfaction of that judgment. The act of the defendant in seeking a satisfaction of that judgment, after he had obtained an assignment of it to his friend, looks as if he had laid his plan thus to defeat the power of the equitable interposition of the court. It may be that no unjust motives entered the defendant's mind until he was pursued by proceedings supplementary to the execution, and that until then he intended to let the execution remain,— and this was intimated by his counsel. If so, then both parties meant the third judgment and the execution, to stand as part of the arrangement under which the first and second judgments should be satisfied; and then there was originally a good intent, but there would be a fraud in departing from that mutual intent.

It was argued that the whole debt was paid in fact. The affidavits on that question are not very satisfactory, and the defendant, if he wishes to, may have a reference to ascertain that fact.

The order appealed from is affirmed, with costs.